**UNITED STATES of America**

v.

**James G. MARTIN.**

**Crim. No. 66–42.**

United States District Court
W. D. Pennsylvania.
July 21, 1969.

John Bingler, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Albert Martin, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

The matter before the court is a motion under Rule 35, Fed.R.Crim.P., by the defendant, James G. Martin, for correction of sentence. Counsel was appointed and a hearing was held.

The defendant was indicted in four counts for violations of § 174 of Title 21 U.S.C.[1] and § 4704(a) of Title 26 U.S.C.[2]

1. Section 174, Title 21 U.S.C., provides in its pertinent part as follows:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the

The first count of the indictment charged that on or about January 20, 1966 in Pittsburgh, Pennsylvania, the defendant in violation of 21 U.S.C. § 174 did unlawfully possess 1.569 grams of heroin, a narcotic drug, knowing that it had been imported into the United States contrary to law. The second count recited the same facts except it charged that 5.637 grams of cocaine had been knowingly imported contrary to law in violation of 21 U.S.C. § 174. The third count charged that on or about January 20, 1966, at Pittsburgh, Pennsylvania, the defendant purchased 1.569 grams of heroin, a narcotic drug, other than in or from the original stamped package in violation of 26 U.S.C. § 4704(a). The fourth count recited the same facts except that 5.637 grams of cocaine was the narcotic drug purchased.

The evidence at the defendant's jury trial revealed that on January 20, 1966, certain Pittsburgh police officers and an agent of the Federal Bureau of Narcotics were in the course of their duties in a house located at 6965 Frankstown Avenue, Pittsburgh, Pennsylvania. While present in the house, there came a knock at the back door. The door was opened by one of the police officers and the defendant stepped into the kitchen. Upon seeing the officer, the defendant rushed past him and out of the kitchen, in the process throwing from his hand into the pantry five small wrapped balloons, two pieces of folded aluminum foil, and a folded piece of brown paper. These items were retrieved by one of the officers and the defendant was placed under arrest. A search of the defendant re-vealed a cigarette pack containing twenty wrapped balloons and a wrapped piece of brown paper. The items which had been thrown into the pantry and the items discovered on the defendant's person, contained a white powdery substance. Analysis showed this to be heroin and cocaine. There were no tax stamps on any of the items.

The jury found the defendant guilty as charged in all four counts. The defendant was sentenced to two concurrent terms of ten years under counts one and two, and to two concurrent terms of ten years under counts three and four. The sentences imposed on counts three and four were to run consecutively with the sentences imposed on counts one and two.

The defendant's conviction was affirmed on appeal, United States v. Martin, 386 F.2d 213 (3d Cir.1967), and certiorari was denied by the United States Supreme Court, Martin v. United States, 393 U.S. 862, 89 S.Ct. 142, 21 L.Ed.2d 130 (1968).

In his motion the defendant urges that three of the 10-year sentences be vacated. He contends that his possession of the narcotic drugs was a single act and only could give rise to one offense. As a result the defendant takes the position that separate and cumulative sentences should not have been imposed. He further contends that the cumulative nature of the sentence violates his constitutional guarantee against double jeopardy.

We note at the outset that jurisdiction exists under Rule 35 to decide this mat-

United States * * * contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law * * * [shall be guilty].

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

2. Section 4704(a) of Title 26 U.S.C. reads: "It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

ter. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Hackett v. United States, 348 F.2d 883 (6th Cir.1965).

We shall first consider defendant's contention that only one offense arose out of his conduct.

The possession of heroin formed the basis for the charges in the first and third counts and the possession of cocaine formed the basis for the second and fourth counts. We think that under the facts and circumstances that exist in this case, each specific narcotic drug cannot be the basis for a separate count. The defendant was in possession of both narcotic drugs at the same time and at the same place.

The third and fourth counts pertain to violations of 26 U.S.C. § 4704(a).[3] This section makes it unlawful, inter alia, to purchase narcotic drugs except in or from the original stamped package; and possession of narcotic drugs without tax stamps is prima facie evidence of a violation.

The section uses the words "narcotic drugs"; it does not differentiate between or specify types of narcotic drugs.[4] Because of this we think that this section cannot reasonably be interpreted to make it a separate offense to purchase, etc. each kind or type of narcotic drug. Moreover, in the absence of actual proof of purchase, etc., the section permits mere possession to be prima facie evidence of a violation. In our judgment this statutory aid cannot be construed to mean that possession of two or more different narcotic drugs at the same time can be prima facie evidence of two or more separate purchases. To do so would be a denial of due process. See: Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

In this case the possession of the narcotic drugs by the defendant was the essence of the violation of this section. There was no proof of any actual purchase or that each drug was purchased in a separate transaction. Therefore, it is our opinion that there was only one violation of 26 U.S.C. § 4704(a).

The first and second counts which charged violations of 21 U.S.C. § 174[5] also used a different narcotic drug as the basis for each count.

Section 174, 21 U.S.C., uses the words "any narcotic drug" rather than the words "narcotic drugs" as used in 26 U.S.C. § 4704(a). It can be argued that since the word "any" implies singularity in number, a separate offense would be created with respect to each narcotic drug. We reject such a construction based on Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), where although the Mann Act, 18 U.S.C. § 2421 used the phrase "any woman or girl", transportation simultaneously of two women was held to constitute one violation. See also: Smith v. United States, 211 F.2d 957 (6th Cir.1954) and Braden v. United States, 270 F. 441 (8th Cir.1920). Therefore, based on the same rationale that was applied to the counts relating to § 4704(a), 26 U.S.C., we hold that only one offense was created under 21 U.S.C. § 174.

Our decisions are supported by Parmagini v. United States, 42 F.2d 721 (9th Cir.1930), a case which is substantially in point with the case at bar. In *Parmagini* the defendant was indicted and convicted of unlawfully selling and distributing a quantity of morphine and a quantity of opium not in nor from the original stamped package. One count of the indictment pertained to morphine and another pertained to opium. The defendant was also indicted and convicted of concealing both drugs knowing that they had been unlawfully imported. There were two counts for these violations, one pertaining to morphine and the other to opium. The evidence

---

3. See f. n. 2, supra.

4. Cf. Normandale v. United States, 201 F. 2d 463 (5th Cir. 1953) construing § 2553

(a) of the Harrison Narcotics Act which specifies certain drugs.

5. See f. n. 1, supra.

showed that there was a single transaction for the sale of the morphine and that the opium was delivered along with it. The court held that the transaction constituted but one offense for selling and distributing although there were two narcotic drugs involved. Furthermore, with respect to the convictions of the concealment of unlawfully imported drugs, the Court held that "where opium and morphine [are] * * * concealed in a single package, only one offense is committed by such concealment regardless of the fact that more than one narcotic drug is contained in the package." Parmagini v. United States, *supra*, at p. 725.

There has been some criticism of the *Parmagini* case after Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), was decided.[6] However, *Blockburger* involved distinctly separate sales of the same narcotic drug with each sale forming the basis for a count in the indictment. This is clearly distinguishable from *Parmagini* and the case *sub judice*.

 Defendant's contention that he had committed but one offense cannot be sustained. It has been well settled since Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), that a single act can give rise to more than one crime.

The double jeopardy position of the defendant is clearly without merit. Gore v. United States, *supra*.

In light of the foregoing, in our opinion there were only two offenses committed,—one with respect to § 174, 21 U.S.C., and another with respect to § 4704(a), 26 U.S.C. Therefore, the first and second counts will merge and the third and fourth counts will merge. Since only two offenses exist, there can only be two sentences; accordingly, we will vacate one of the concurrent sentences imposed at counts one and two and one of the concurrent sentences imposed at counts three and four. The net effect

of this decision leaves the length of defendant's time of imprisonment unaffected since we find that two of the 10-year sentences which are to be served consecutively are valid.

It is to be observed that the concurrent sentence doctrine does not preclude this decision. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (June 23, 1969).

An appropriate order will be entered.

---

6. See United States v. Busch, 64 F.2d 27 (2d Cir. 1933).